**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

**CLARA S. MITCHELL, as Personal Representative
of Bobby Mitchell, dec., et al.**

     **Plaintiff,**

**v.**                     **CIVIL ACTION NO. 3:05cv1210-B**

**DEBBIE A. SWEET,**

     **Defendant,**

**<u>PLAINTIFF'S RESPONSE TO SHOW CAUSE ORDER</u>**

On November 29, 2006, the Defendant, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") filed a "Motion for Adjudication of Medicare Subrogation Interest". On December 1, 2006, this Court ordered Plaintiff to show cause why the motion should not be granted. In response to said Order to Show Cause, Plaintiff says:

1.     Plaintiff agrees with State Farm that Medicare's alleged subrogation interest needs to be adjudicated for the protection of the parties to this action;

2.     Plaintiff disagrees that Medicare needs to be directed to appear for a hearing with respect to its alleged subrogation interest, as requested by State Farm, because:

     a.  Medicare has chosen not to intervene in this action with respect to its alleged subrogation interest;

     b.  Undersigned counsel for Plaintiff has (in November) personally called Medicare and advised them of the issue and of Plaintiff's position in an attempt to resolve this matter, and has left his name and phone number, but has received no subsequent communication from Medicare.

c. It appears clear under applicable law, as discussed below, that Medicare has no subrogation interest in the settlement of the claim for the wrongful death of Bobby Mitchell under Alabama law; and,

d. Ordering Medicare to appear in this action and participate in hearings will unduly and unnecessarily delay the final resolution of this case.

3. This lawsuit involves a claim by Clara Mitchell, individually, for her own injuries, and a claim by her as the representative of the estate of her husband, Bobby Mitchell, for his wrongful death. The letter sent by Medicare to State Farm concerning its claimed subrogation interest only relates to benefits paid on behalf of Bobby L. Mitchell.

4. The only claim pending before this Court relative to Bobby L. Mitchell is a claim under Alabama's Wrongful Death Statute, Ala. Code, §6-5-410 (1975). The sole damages recoverable under Alabama's Wrongful Death Act are punitive in nature. Compensatory damages are not recoverable. Ala. Code, §6-5-410 (1975); Heath v. United States, 85 F. Supp. 196 (N.D. Ala. 1949).

5. A closely analogous issue was addressed with regard to Alabama's hospital lien statute wherein the Alabama Court of Civil of Appeals held that Alabama's statutory hospital lien for medical bills does not reach a judgment paid in a wrongful death action in Alabama. Board of Trustees of Univ. of Ala. v. Harrell, 43 Ala. App. 258, 188 So. 2d 555 (1965). The damages paid under Alabama's Wrongful Death Act are punitive in nature, not actual or compensatory. Losses such as medical expenses attending the injury are not be considered as elements of damage. The law does not allow the administrator, out of the damages, to pay any creditor of the deceased. Harrell, supra; see also Riddlesperger v. United States, 406 F. Supp. 617 (N.D. Ala. 1976).

6.      In <u>Arkansas Department of Health and Human Servs. v. Ahlborn</u>, __ U.S. __, 126 S. Ct. 1752, 164 L. Ed, 2d 459 (2006), the United States Supreme Court recently considered whether Medicaid's statutory subrogation interest in third party recoveries [42 U.S.C. §1396 a(a)(25)(A)] allowed it (through assignment of its rights to the Arkansas Department of Health Services) to seek reimbursement from a plaintiff on whose behalf Medicaid had paid benefits out of **any** personal injury damages received by the plaintiff, such as damages for pain and suffering, loss of earnings and work time, and permanent impairment of future earning ability, in addition to damages for medical costs.

> We must decide whether ADHS can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses.  The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care.  Medicaid recipients must, as a condition of eligibility, "assign the state any rights . . . to *payment for medical care* from any third party," 42 U.S.C. § 1396(a)(1)(A) (emphasis added), "not rights to payment for, for example, lost wages."  <u>Ahlborn</u>, 12 S.Ct. at 1760-61.

The Supreme Court proceeded to note that "the statute does not sanction an assignment of rights to payment for anything other than medical expenses – not lost wages, not pain and suffering, not an inheritance." <u>Ahlborn</u>, 126 S.Ct. at 1761. ". . . [T]he Federal Third-Party Liability Provisions require an assignment [to the state] of no more than the right to recover that portion of a settlement that represents payments for medical care." *Id* at 1762.

The Supreme Court reached its conclusion even in the face of the United States' argument that plaintiffs might manipulate settlements to characterize damages as ones other

than for medical costs.   "The United States alternative argument that a rule of full reimbursement is needed to generally avoid the risk of settlement manipulation is more colorful, but ultimately also unpersuasive. . . .For just as there are risks in underestimating the value of readily calculable damages in settlement negotiations, so also is there a counter-veiling concern that a rule of absolute priority might preclude settlement in a large number of cases, and be unfair to the recipient in others."  *Id* at 1765.

Commentators have noted that ". . .[A]hlborn's logic should control repayment claims by other federal programs, such as those asserted under the Medical Care Recovery Act ("MCRA") and the Medicare Secondary Payer Act ("MSPA") because the basic structure of the repayment obligation is the same under all three federal statutes and because all three acts share a common congressional purpose."  "Journal of the ATLA", Summer 2006, p. 35.

Furthermore, in this particular situation, Medicare is one more step removed from the plaintiff's recovery than Medicaid was in <u>Ahlborn</u>.  Whereas, the damages in <u>Ahlborn</u> were compensatory in nature, the sole damages for the wrongful death claim in this action are punitive.  Those punitive damages pass directly to the heirs of the decedent under Alabama law.  The damages do not become part of the deceased's estate.  <u>Steele v. Steele</u>, 623 So. 2d 1140 (Ala. 1993); <u>U.S. Fidelity & Guaranty Co. v. Birmingham Oxygen Service</u>, Inc., 290 Ala. 149, 274 So. 2d 615 (Ala. 1973).

Given the applicable state and federal law discussed above, Plaintiff submits that it is not debatable that Medicare has no subrogation interest in the punitive damage recovery under Alabama law for Bobby Mitchell's death proposed by the parties' settlement agreement. Plaintiff requests this Honorable Court to enter a declaration that Medicare has no interest in

any proceeds of the settlement of the wrongful death claim for Bobby Mitchell's death under

Alabama law, so that this matter can be finally resolved.


Respectfully submitted,

/s/Roger L. Lucas_____
ROGER L. LUCAS
AL. Bar Id:  ASB 2555 S80R



**OF COUNSEL**:
**LUCAS, PETWAY, TUCKER & WASH, P.C.**
Two Chase Corporate Drive, Suite 460
Birmingham, AL 35242
(205) 733-1595 - phone
(205) 733-8683 - fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 11th day of December 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Hunter C. Carroll, Esq.
Stockham, Carroll & Smith, P.C.
2204 Lakeshore Drive, Suite 114
Birmingham, AL  35209
hcc@stockhampcc.com

Stanley A. Martin, Esq.
S. Allen Martin, Jr., Esq.
P.O. Box 2526
Opelika, AL  36803-2526

/s/ROGER L. LUCAS
Roger L. Lucas
Lucas, Wash, Petway, Tucker
& Stephens, P.C.
Two Chase Corporate Drive
Suite 460
Birmingham, AL  35244
Ph:  (205) 733-1595
Fax: (205) 733-8683
rlucas@lawpc.com
ASB 2555 S80-R